# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 23-524-3 |
| CHARLES ALSTON | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its undersigned attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Brian Doherty, Special Assistant United States Attorney for the district, respectfully submits this sentencing memorandum regarding defendant Charles Alston. As is more fully described below, the government urges the Court to accept the terms of the parties' Rule 11(c)(1)(C) plea agreement and sentence the defendant within the range of 94 to 121 months' imprisonment and five years of post-release supervision. Consistent with this agreement, the government urges the Court to accept the terms of the parties' plea agreement and recommends a sentence of 121 months' imprisonment for the reasons set forth below, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1] At

---

[1]  Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.    **PROCEDURAL BACKGROUND**

On December 14, 2023, a federal grand jury returned an Indictment charging the defendant with one count of interference with interstate commerce by robbery, in violation of Title 18, United States Code, Section 1951(a) ("Hobbs Act robbery"), and one count of using, carrying and brandishing a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii), and aiding and abetting on each of those counts, in violation of  Title 18, United States Code, Section 2, all arising from an armed robbery of a restaurant that occurred in Philadelphia, in the Eastern District of Pennsylvania, on September 25, 2022. The defendant pled guilty to both counts in the Indictment on September 10, 2025. A sentencing hearing is scheduled for January 14, 2026.

## II.   **FACTUAL BACKGROUND**

On September 25, 2022, shortly after 6:00 pm, the defendant and his accomplices, Naquil Oliver and Samar Felder, entered a Popeyes restaurant at 2749 West Hunting Park Avenue in Philadelphia to commit a robbery. All had face coverings and wore dark clothing. Two of the three were in possession of guns. They prevented customers from leaving and the defendant and Felder walked into a back room where the manager was working. Felder directed the manager from the back room at gunpoint to the front registers, demanding that he open them. The manager opened the registers with his key and the defendant and Oliver emptied the cash as Felder held the manager at gunpoint. The following screenshot from surveillance video shows the robbers after the manager opened the till, with Felder's gun highlighted and the defendant standing in front of the manger taking money from the register:



At the time the robbers entered, a customer was ordering food at the front register. He

complied with demands to stay still and show his hands. Defendant Oliver pointed a gun at him and demanded his wallet. Oliver removed the wallet from the customer's back pocket and placed it into his own pocket. After taking approximately $1,800 in cash from the registers, the robbers fled the restaurant.

Within five minutes of the robbery, police located the three males only blocks from the Popeyes. Two Philadelphia police officers were together in the same patrol vehicle in the area of the Popeyes when they received information over the radio of an armed robbery that just occurred there. The officers drove towards the restaurant and noticed three males together, heading in their direction, who fit the description relayed over radio. The males were dressed consistent with the clothing apparent in the Popeyes surveillance video that captured the incident.

As the officers approached the area, the defendant and Oliver crossed to the south side of the street, and Felder remained on the north side. As one of the officers exited the patrol vehicle from the passenger side to stop Felder, all three males began running. Another officer continued in his patrol car after the defendant and Oliver. The officer chasing Felder observed a gun in his hand and gave commands to stop. The officer watched Felder discard the gun on the sidewalk before apprehending him a block later. Police recovered Felder's gun shortly after his capture and discovered it to be a stolen, loaded, Sig Sauer handgun.

The other officer followed the defendant and Oliver on the south side of the street in his patrol car while shouting commands to stop from the driver's seat. He saw a gun in Oliver's hand and watched him throw it over his police car to the other side of the street. Police later recovered this gun and found it to be a Glock replica BB gun. The officer watched the defendant climb a fence that led to train tracks. Oliver then stopped walking and dropped a hat that he wore during

the robbery onto the ground. The officer detained Oliver and placed him into his police car.

Other responding officers began to search for the defendant, who climbed the fence onto the train tracks. After approximately 15 minutes, officers located him hiding in overgrown weeds adjacent to train tracks below. By the time he was caught, the defendant had shed the clothing from his upper body and was shirtless. Cash totaling $1,656 was found at his feet.

Much of the police interaction, including the chase and apprehension of the defendant, was captured on police bodycam. Police recovered other items related to the robbery on Oliver's person including the customer's wallet that was stolen in the robbery and $140 in cash from Oliver's pockets. In addition, victims from the Popeyes identified the defendant and his two accomplices as the ones that committed the armed robbery.

At all times relevant to the charges in this case, the Popeyes restaurant was a business engaged in and affecting interstate commerce, by providing customers with goods and services produced, purchased and transported from other states to Pennsylvania.

## III.    SENTENCING CALCULATION & PRESENTENCE REPORT

### A. Statutory Maximum and Mandatory Minimum Penalties

The statutory maximum penalty for Hobbs Act robbery is 20 years' imprisonment, three years' supervised release, a $250,000 fine, and a $100 special assessment. The maximum penalty for brandishing a firearm during a crime of violence as set forth in 18 U.S.C. § 924(c)(1)(A)(ii) is life imprisonment,[2] a mandatory minimum term of seven years' imprisonment consecutive to any other sentence imposed, up to five years of supervised release, a fine of $250,000, and a $100

---

[2] The statute does not provide for a maximum penalty, but the Third Circuit has held that the maximum penalty is life imprisonment. *United States v. Shabazz*, 564 F.3d 280, 289 (3d Cir. 2009).

special assessment.

The total maximum sentence in this case therefore is life imprisonment, a mandatory minimum seven years' imprisonment consecutive to any other sentence of imprisonment imposed, up to five years of supervised release, a $500,000 fine, and a $200 special assessment. The government is also seeking forfeiture of the firearm, the BB gun, and ammunition seized.

**B.  Sentencing Guidelines Calculation**

The government agrees that the base offense level is 20 under USSG § 2B3.1. PSR ¶ 22. In addition, a four-level enhancement applies under USSG § 2B3.1(b)(4)(A) because the manager was abducted to facilitate commission of the offense.[3] PSR ¶ 24. The defendant is entitled to a three-point reduction under USSG § 3E1.1(a), (b). PSR ¶¶ 30, 31. Further, the defendant's criminal history score places him in Category I. PSR ¶ 36. Therefore, the United States Probation Office correctly calculated an advisory guidelines range of 121 to 130 months' imprisonment. PSR ¶ 77.

**IV.    ANALYSIS OF STATUTORY FACTORS**

The Supreme Court has declared that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."

---

[3] Two of the defendants forced the manager from the back room at gunpoint to the front of the store in order to open the registers. As the Third Circuit noted in *United States v. Reynos,* itself a case involving this exact factual scenario:

> From this Guideline, we distill three predicates that must be met before the abduction enhancement can be applied. First, the robbery victims must be forced to move from their original position; such force being sufficient to permit a reasonable person an inference that he or she is not at liberty to refuse. Second, the victims must accompany the offender to that new location. Third, the relocation of the robbery victims must have been to further either the commission of the crime or the offender's escape.

*Reynos*, 680 F. 3d 283, 286-87 (3d Cir. 2012).

*Gall v. United States*, 52 U.S. 38, 49 (2007).  In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A.    The Nature and Circumstances of the Offense

This was a very serious offense. The defendant fled police after committing an armed, daytime robbery of a fast-food restaurant. During the offense, a coconspirator brandished a real, stolen firearm during the robbery. The defendant took an active role by helping force the manager form the back room to open the registers and grabbing the bulk of the cash stolen during the offense. The defendant evaded capture by hiding in overgrown weeds adjacent to train tracks. After police discovered him hiding amongst the overgrowth, they found him shirtless and with over $1,600 in cash scattered on the ground around him. The seriousness of the defendant's conduct, and his knowing and active participation in an armed robbery scheme with a loaded firearm, supports a sentence of 121 months' incarceration followed by a five-year period of supervised release. This sentence is both within the range contemplated by the guilty plea agreement and in the advisory guideline range.

## B.      The History and Characteristics of the Defendant

The defendant's recent criminal history shows cause for concern. The defendant currently has six open cases in the Philadelphia Court of Common Pleas. PSR ¶ 38-43. Five of them appear to be related to a series of vehicle break-ins and thefts from October of 2023. While on bail for the vehicle thefts, the defendant was arrested for drug dealing on December 1, 2023, and released on bail.

The defendant's refusal to turn himself in on pending charges also supports a sentence at the top end of the agreed upon range. The defendant, following his federal indictment for this case, had *seven* active bench warrants. He was only arrested following a traffic stop in February of 2025, more than a year after his first bench warrant was issued. Nevertheless, the defendant's young age, and his relative lack of criminal history before the robbery, suggests a sentence at the bottom of the applicable guidelines range. A sentence of 121 months' incarceration followed by a five-year period of supervised release would therefore adequately address his past criminal actions.

## C.      The Seriousness of the Offense, Respect for the Law, and Just Punishment

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). Firearms offenses are among the most serious and dangerous of the crimes punishable by federal law. A sentence of 121 months' incarceration followed by a five-year period of supervised release reflects the seriousness of defendant's criminal conduct and promotes respect for the law.

## D.      Deterrence

In fashioning the appropriate sentence, a court should account for both specific and general deterrence. As the Courts of Appeals have held before and after *Booker*, deterrence under

Section 3553(a) is not limited to deterring the particular defendant.  *See e.g.*, *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); *United States v. Glover*, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre-*Booker* and post-*Booker*, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation") (internal quotation marks and citation omitted); *United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation").

Here, specific deterrence is important. The top of the agreed upon range, touching on the applicable guidelines range, is necessary to deter the defendant from future criminal conduct. A sentence of 121 months' incarceration followed by a five-year period of supervised release does just that. Such a sentence also sends a message to others in the defendant's community that armed Hobbs Act robbery is a serious criminal offense and will result in a significant period of incarceration.

### E.    Consistency in Sentencing

Sentencing consistency is extremely important in the overall administration of justice, and the sentencing guidelines and the need to avoid unwarranted sentencing disparities stand as an important consideration in this case. While these sentencing factors are primarily designed to ensure sentencing consistency among similarly situated defendants across the entire nation, *see United States v. Parker*, 462 F.3d 273 (3d Cir. 2006); *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between

defendants with similar criminal histories convicted of similar criminal conduct B not disparities between codefendants.'"), the Court is permitted to take a sentencing disparity among co-defendants into account. *See United States v. Parker*, 462 F.3d 273, 278 (3d Cir. 2006) ("Where appropriate to the circumstances of a given case, a sentencing court may reasonably consider sentencing disparity of co-defendants in its application of those factors."). A sentence of 121 months' incarceration is within the guidelines range and would therefore promote consistency with the sentencing guidelines.

F.    **Other Considerations**

There is no need to adjust the defendant's sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The government is not aware of any unique issues regarding education or vocational training relating to this defendant. However, to the extent that the defendant wishes to better himself through training and education, the recommended term of incarceration will not inhibit those efforts while he is in the custody of the Bureau of Prisons or while on supervised release. In addition, the defendant has agreed to forfeiture of the firearm, the BB gun, and ammunition seized.

## V.    <u>**CONCLUSION**</u>

For the reasons set forth above, the government respectfully requests that the Court accept the terms of the parties' plea agreement and impose a sentence of 121 months' incarceration followed by a five-year period of supervised release. This would sufficiently reflect the seriousness of the instant offense and account for the history and characteristics of the defendant. This sentence is also sufficient but not greater than necessary to meet the goals of sentencing, as outlined above.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Brian Doherty*
BRIAN DOHERTY
Special Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I caused a true and correct copy of the foregoing

Government's Sentencing Memorandum to be served by ECF upon counsel for defendant:

Marni Jo Snyder, esq.

*/s Brian Doherty*
BRIAN DOHERTY
Special Assistant United States Attorney

Date:  January 8, 2026